**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **JOAQUIN ENRIQUEZ YEPIZ,** ) | |
| ) | |
| **Plaintiff,** ) | **Case  No. CV 12-05226 AJW** |
| ) | |
| **v.** ) | **MEMORANDUM OF DECISION** |
| ) | |
| **CAROLYN W. COLVIN[1],** ) | |
| **Acting Commissioner of Social** ) | |
| **Security,** ) | |
| ) | |
| **Defendant.** ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security ("SSI") income benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are undisputed and are summarized in the joint stipulation. [JS 2-3].  On November 17, 2008, plaintiff, then aged 36, filed his benefits applications.  He alleged disability since August 24, 2008 due to injuries to his left upper extremity sustained in a car accident. [JS 2; Administrative Record ("AR") 15-26, 149].  In a written hearing decision that constitutes the final decision of the

---

[1]  Carolyn W. Colvin is substituted as defendant in place of her predecessor in office, Michael J. Astrue.  See Fed. R. Civ. P. 25(d).

1  Commissioner, the ALJ concluded that plaintiff was not disabled because he could perform work available

2  in significant numbers in the national economy. [JS 2;  AR 21-30].

**Standard of Review**

4  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

5  evidence or is based on legal error.  Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

6  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

7  a mere scintilla, but less than a preponderance."  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

8  2005).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

9  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted).  The court is

10  required to review the record as a whole and to consider evidence detracting from the decision as well as

11  evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

12  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than

13  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

14  Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

15  1999)).

**Discussion**

**Severity determination**

18  Plaintiff contends that the ALJ improperly found that the plaintiff did not suffer from a severe mental

19  impairment.  [JS 8].

20  The ALJ found that plaintiff had a severe physical impairment consisting of "a non-functional non-

21  dominant left upper extremity." [AR 23].  The ALJ noted that plaintiff sustained a left arm injury in a motor

22  vehicle accident while on vacation in Mexico in August 2008.  Plaintiff's left (non-dominant) hand

23  remained attached by a thin bridge of skin. [AR 25-26].  Plaintiff underwent surgery to reattach his left

24  hand, but the ALJ determined that "the overall record clearly establishes non-functionality of the left upper

25  extremity." [AR 26].

26  The ALJ found that plaintiff did not have a severe mental impairment.  He noted that the record

27  "contains scattered references to [plaintiff's] complaints of depression due to his physical condition," but

28  that "the record did not indicate ongoing psychiatric therapy or hospitalization.  Further, the record

demonstrates that [plaintiff] is taking Wellbutrin[2] for his depression without any noted complaints of ineffectiveness or side effects." [AR 24]. The ALJ acknowledged that plaintiff "expressed frustration and sadness regarding his inability to provide for his six children and cries sometimes as a result." [AR 27]. However, he concluded that plaintiff's alleged mental impairment was primarily due to situational factors, namely his "discomfort and decreased physical ability," rather than to a "mental disease process." [AR 27-28]. Notwithstanding the absence of a severe mental impairment, the ALJ found that plaintiff had the residual functional capacity for no more than "simple, routine, and repetitive tasks to accommodate concentration problems that may be related to pain and/or preoccupation with mental issues." [AR 28].

At step two of the sequential evaluation procedure, a claimant has the burden to present evidence of medical signs, symptoms and laboratory findings that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004–1005 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996). A medically determinable mental impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908; see 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Symptoms are the claimant's description of his or her impairment, while psychiatric signs are medically demonstrable and observable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality. See 20 C.F.R. §§ 404.1520a(b), 404.1528(b), 416.920a(b), 416.928(b); see also Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1-*2.

If a claimant demonstrates the existence of a medically-determinable impairment, the ALJ must determine whether the impairment is severe, that is, whether it significantly limits the claimant's ability to

---

[2]     Wellbutrin (bupropion) "is used to treat depression." United States Library of Medicine and National Institutes of Health, MedlinePlus website, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695033.html (last accessed Mar. 14, 2013).

perform "basic work activities."  20 C.F.R. §§ 404.1521 (a), 416.921(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations.  20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ must consider the claimant's subjective symptoms in making a severity determination if the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)."  SSR 96-3p, 1996 WL 374181, at *2.  If the claimant produces such evidence, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  Smolen, 80 F.3d at 1281.

Plaintiff contends that the ALJ's finding that he had no severe mental impairment is not supported by substantial evidence because plaintiff was diagnosed with depression, had thoughts of hurting himself, and suffered from crying spells.  [JS 4 (citing AR 181, 224-225)].  Plaintiff points to a February 16, 2010 treatment report stating that he  presented to Los Angeles County - USC Medical Center ("County USC") Emergency Department complaining of depression because he did not have a job and had six children to care for. [AR 224].  He reported that he had thoughts about hurting himself, but then said  that he did not intend to do so because "I have to be here to care for my children." [AR 224].  Plaintiff was taking Wellbutrin, Vicodin, and Motrin.  He reported being "happy about receiving Wellbutrin from Psychiatry." [AR 225].  Plaintiff was discharged home in stable condition with a diagnosis of depression.  He was instructed to follow up in the Psychiatric Department, but there are no follow-up treatment records. [AR 225].

Plaintiff's contention lacks merit.  A diagnosis of depression, without more, is insufficient to establish a severe impairment.  See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (noting that although step two "requires a 'de minimis' showing of impairment," a claimant "must show more than the mere presence of a condition or ailment") (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  Plaintiff's

4

diagnosis of depression appears to have been based solely on plaintiff's subjective history of feeling depressed and thinking of harming himself.   No psychiatric signs indicating specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality were noted. See 20 C.F.R. §§ 404.1520a(b), 404.1528(b), 416.920a(b), 416.928(b).   Plaintiff was "well-appearing," "calm/pleasant," "convers[ed] appropriately," and made appropriate eye contact. [AR 224].   Moreover, the County USC emergency room physician did not note any concern for plaintiff's safety, impose any mental functional limitations, or offer any treatment beyond plaintiff's existing prescription for Wellbutrin.

Plaintiff also cites an email from his son to plaintiff' disability counsel indicating that plaintiff had frequent episodes of crying and "tells me he cries because of the pain, but [I] know he cries because he feels somewhat helpless because he cant [sic] provide for his family anymore, which he was doing his whole life." [AR 181]. During the hearing, plaintiff testified that he cried "two or three times a week, sometimes, sometimes everyday.  It depends on how I'm feeling.  Part of it is the pain and then it hurts me too that I can't provide for my kids anymore." [AR 61].  Because the record contains no evidence of "psychological abnormalities . . . shown by medically acceptable clinical and laboratory diagnostic techniques," plaintiff's subjective symptoms as described by plaintiff and his son were insufficient to establish a severe mental impairment.  20 C.F.R. §§ 404.1508, 416.908.

Plaintiff also contends that the ALJ's severity finding erroneously relied, in part, on plaintiff's failure to allege that he was disabled to due depression on his benefits applications as well as on the absence of evidence of psychiatric hospitalizations.  Neither of those factors is significantly probative at step two. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[D]epression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious medical illness."); French v. Astrue, 2010 WL 2803965, at *6 (C.D.Cal. July 15, 2010) ("A claimant may suffer from a mental impairment without having been hospitalized for that limitation."). Nonetheless, substantial evidence supports the ALJ's step two finding because the medical evidence as a whole "clearly establishes" that plaintiff's depression did not rise to the level of a severe mental impairment. Webb, 433 F.3d at 687.

Plaintiff further contends that the ALJ erred in finding that plaintiff's left upper extremity impairment was his only severe physical impairment. [JS 5 (citing AR 226)].   The only record evidence

1    plaintiff cites is a finding of "tenderness in the lumbar spine" in a January 2010 County USC Emergency

2    Department record. [AR 226-227]. Plaintiff presented to County USC on that date with complaints of

3    chronic back pain for one year. He exhibited tenderness over the right lumbar spine. [AR 226]. A lumbar

4    spine x-ray was normal, and "other lab results" were negative.  [AR 227-228].  The diagnosis was chronic

5    low back pain. [AR 227].  Plaintiff was prescribed Robaxin[3] and instructed to follow up with his primary

6    care provider [AR 227], but there is no record of follow-up treatment.   No functional impairments were

7    noted. [AR 227].

8            The ALJ did not err in finding no severe lumbar spine impairment because tenderness to palpation

9    on one examination is not an objective anatomical or physiological abnormality establishing a medically

10   determinable lumbar spine impairment that has lasted or can be expected to last for a continuous period of

11   not less than twelve months.  See 42 U.S.C. §§ 423(d)(1)(A),(d)(3), 1382c(a)(3)(A)&(D); see also Ukolov,

12   420 F.3d at 1005-1006 (holding that where a neurological test result was "susceptible to subject

13   manipulation" in that the subject could control the extent of his or her response, a single positive result was

14   not an "objective medical abnormalit[y]," and the ALJ did not err in finding no severe physical impairment).

15   Furthermore, when asked during the hearing whether he had physical injuries in addition to his left upper

16   extremity injury, plaintiff did not mention a back injury or back problems. [AR 56, 65].

17           Plaintiff also argues that the ALJ ignored plaintiff's testimony that the quality of his care depended

18   on what provider he happened to see at County USC, and that these providers changed every time he sought

19   treatment. [JS 4 (citing AR 52)].  During the hearing, plaintiff testified that every time he went to County

20   USC, he saw a different doctor, and that he was "confused" because "[o]ne doctor told me one thing and

21   then when I go back they tell me a different thing . . . ." [AR 52].  Plaintiff has not pointed to evidence that

22   the treatment he received at County USC for his mental or physical problems was deficient.  To the contrary,

23   plaintiff testified that County USC was "the best" for the additional surgery he was scheduled to undergo

24   to alleviate chronic pain in his left arm, and that "they saved my hand there [at County USC]. . . ." [AR 48-

25   49].

26   _____

27      [3]    Robaxin (methocarbamol) is "used with rest, physical therapy, and other measures to relax
     muscles and relieve pain caused by strains, sprains, and other muscle injuries." United States Library

28   of  Medicine  and  National  Institutes  of  Health,  MedlinePlus  website,  available  at
     http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682579.html (last accessed Mar. 14, 2013).

For all of these reasons, plaintiff's contentions regarding the ALJ's severity finding lack merit.

**Credibility finding**

Plaintiff contends that the ALJ erred in evaluating his subjective symptom testimony. [JS 9].

The ALJ summarized plaintiff's subjective testimony as follows:

The claimant testified at the hearing that he has "no use of the left hand." He experiences pain that travels from the palm of his [left] hand up to his shoulder. He takes Vicodin for the pain, but stated relief lasts only 30 minutes. He experiences side effects from pain medications, including upset stomach, constipation and dizziness. With respect to activities of daily living, the claimant denied performing any household chores, grocery shopping, or driving unless it is an "emergency." The claimant indicated he requires assistance from his wife or children to dress, shower, or administer IV antibiotics. He wears a brace on his left hand 24 hours a day. Nevertheless, the claimant testified that he accompanies his wife to go grocery shopping, takes walks, and tries to exercise. The claimant stated he could lift up to 8 pounds with his dominant (right) hand.

[AR 26].

The ALJ found that plaintiff had the RFC to perform the lifting and carrying requirements of light work with his dominant right upper extremity but could not perform any pushing, pulling, lifting, reaching, handling, fingering, or feeling with his left upper extremity. Plaintiff could meet the standing, walking, and sitting demands of light work. He was precluded from climbing ladders, ropes, or scaffolds; crawling; concentrated exposure to extreme vibration; hazardous machinery; unprotected heights; and other high-risk, hazardous, or unsafe conditions. Plaintiff also was limited to simple, routine, and repetitive tasks. [AR 25]. The ALJ partially credited plaintiff's subjective testimony by giving plaintiff an RFC that was more restrictive than either the Commissioner's examining orthopedic surgeon or the state agency nonexamining physician. [See AR 25-28; 191-207].

In evaluating the credibility of plaintiff's subjective complaints, the ALJ found that "the record clearly establishes non-functionality of the left upper extremity." [AR 26]. Furthermore, "[b]ased on a review of the records, it is apparent the claimant's current treatment modalities have been unsuccessful in ameliorating the pain in his left arm." [AR 26].  The ALJ further found plaintiff's subjective complaints

1    credible to the extent that he limited plaintiff to simple, routine, repetitive tasks "to accommodate

2    concentration problems that may be related to pain and/or preoccupation with mental issues." [AR 28].   The

3    ALJ rejected plaintiff's testimony that pain in his left upper extremity, weakness, tiredness, and difficulty

4    functioning one-handed made him completely unable to work. [AR 27-28].

5         Once a disability claimant produces evidence of an underlying physical or mental impairment that

6    is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all

7    subjective testimony as to the severity of the symptoms.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

8    2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a),

9    416.929(a) (explaining how pain and other symptoms are evaluated).   Although the ALJ may then disregard

10   the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing

11   so.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that

12   in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant

13   without providing "clear and convincing reasons").   The ALJ's credibility findings "must be sufficiently

14   specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible

15   grounds and did not arbitrarily discredit the claimant's testimony."  Moisa, 367 F.3d at 885.  If the ALJ's

16   assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the

17   court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

18        In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented,"

19   including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and

20   intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity,

21   and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain

22   medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other

23   measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the

24   claimant's functional restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c) (3), 416.929(c)(3);

25   see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's

26   policy regarding the evaluation of pain and other symptoms).   The ALJ also may employ "ordinary

27   techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for

28   truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and

1  the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's

2  subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or

3  friends concerning the nature, severity, and effect of the claimant's symptoms.  See Light v. Social Sec.

4  Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

5       The ALJ's reasons for rejecting the alleged severity of plaintiff's subjective complaints were not

6  clear and convincing.  Relying on the findings and conclusions of the Commissioner's examining orthopedic

7  surgeon, Dr. Cunningham, the ALJ found that plaintiff had an intact right upper extremity and could

8  perform the lifting and carrying demands of light work.  [AR 27 (citing AR 196)].  A lack of medical

9  evidence corroborating the alleged severity of a claimant's subjective symptoms is one reason the ALJ may

10 consider, but it cannot form the sole basis for discounting pain testimony.  Burch, 400 F.3d at 681; Bunnell,

11 947 F.2d at 343, 345.  The ALJ also found that plaintiff's testimony that he could "lift up to 8 pounds" with

12 his right hand was inconsistent with his written disability report stating that he could lift about 20 pounds

13 with his right arm only. [AR 27; see AR 160].  Plaintiff did not testify that he could lift eight pounds; what

14 he said was that he could lift a gallon of milk. [AR 63].  Even if plaintiff knew the weight, in pounds, of a

15 gallon of milk, any inconsistency between that testimony and his disability report was immaterial because

16 plaintiff also said in that report that he could carry "[o]ne grocery bag, about a block, two to three times a

17 week." [AR 160].  Light work requires the ability to both lift *and* carry 20 pounds occasionally, meaning

18 "from very little to up to one-third of the time."  SSR 83-10, 1983 WL 31251, at *5-*6.  Therefore,

19 plaintiff's disability report was consistent with his subjective complaints regarding carrying objects even

20 if an apparent conflict exists as to the exact weight he could lift.

21      The ALJ also found that plaintiff's testimony that "he cannot get dressed with his right hand alone"

22 suggested that he was exaggerating his limitations given the availability of "reasonable choices [in]

23 clothing" such as slip-on footwear or clothes with Velcro fasteners. [AR 27-28].  Plaintiff, however, did not

24 testify that he was unable to get dressed alone or could not do so because he failed to make "reasonable

25 choices" in clothing.  He said this:

26      "[W]hen I'm putting the clothes on, when I'm getting dressed it's just, it's hard for me.  It

27      takes a long time for me to get dressed with one hand. . . . [¶] So, you know, like if I'm, I

28      have a doctor's meeting or something . . . and I got to hurry up I just can't.  My son got to

1   help me.  I can't tie my shoes.  I have these pair of shoes now that I just stick my feet in there

2   and just, you know, I don't have to tie them up no more. . . . [¶] And then sometimes it's

3   really easy.  Like that I'm able to do [it]."

4   [AR 64-65].  Plaintiff's testimony that he took longer to dress himself one-handed, could not dress himself

5   quickly, and needed help tying shoes, but also had slip-on shoes that were easy to wear, does not reasonably

6   support the inference plaintiff was exaggerating his symptoms or limitations.  Many work-related activities

7   requiring the use of the upper extremities for lifting, carrying, pushing, pulling, reaching, handling,

8   fingering, and feeling cannot be so easily or consistently adapted to one-handedness as choosing which

9   clothes to wear.

10   See SSR 83-12, 1983 WL 31253, at *4 ("Loss of major use of an upper extremity is rather definitive in that

11   there is a considerable absence of functional ability. . . . [A]n amputation above the elbow would limit a

12   person to light work activity with additional limitations because of loss of bimanual manipulation and

13   difficulty or inability to handle bulky objects; effective use of the remaining hand may also be affected.").

14   The ALJ also noted that plaintiff "had not been given any pain medications for routine use other than

15   Vicodin and ibuprofen, and there is an expectation that subsequent surgery will significantly reduce the

16   claimant's residual pain, which, pursuant to medical records, is not widespread but rather localized primarily

17   to the bony non-union" in plaintiff's left upper extremity.  [AR 28].  The ALJ noted that the record

18   documented plaintiff's complaints of chronic pain and that plaintiff's treatment to date, which included

19   reconstructive surgery, use of a wrist splint, Vicodin and ibuprofen for pain, other medications, and surgical

20   treatment of infections in his wrist, had been "unsuccessful in ameliorating" plaintiff's left upper extremity

21   pain. [AR 26, 229-287].  That conclusion is consistent with plaintiff's testimony that he visited the

22   emergency room for pain but they could not help him, and that he had been taking a lot of Vicodin but it

23   had "mess[ed] . . . up" his stomach, and that it was not "helping any more with the pain . . . ."  [AR 55].  A

24   history of failed pain treatment that includes Vicodin, an opioid pain medication[4], and multiple surgical

25

26   _____

   [4]   Vicodin is the brand name for a combination of hydrocodone, an opioid pain medicine, with

27   the analgesic acetaminophen, and is used for the relief of moderate to moderately severe pain.  See
   United States National Library of Medicine, PubMed Health website, at

28   http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010590/?report=details (last accessed Mar. 26,
   2013).

1  interventions is not a clear or convincing reason for discrediting plaintiff's pain allegations.  Cf. Osenbrock

2  v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that the ALJ properly rejected the claimant's

3  testimony because he did not use "Codeine or Morphine based analgesics that are commonly prescribed for

4  severe and unremitting pain").  To the contrary, the ALJ's acknowledgment that plaintiff's pain treatment

5  was "unsuccessful," and that he was scheduled to undergo additional surgery to alleviate his chronic pain

6  [see AR 28, 48-50, 53], bolsters the credibility of plaintiff's pain complaints.  Nor is the "expectation" that

7  plaintiff's pain would be "significantly reduced" *after* surgery a clear and convincing reason for doubting

8  the veracity of plaintiff's pain complaints *before* surgery.

9         Defendant contends that a "legitimate reason" advanced by the ALJ for finding plaintiff not credible

10  was that plaintiff "failed to seek treatment commensurate with his complaints." [JS 16 (citing AR 28)].  The

11  ALJ stated that plaintiff "is not receiving any type of ongoing psychiatric or psychological treatment other

12  than being prescribed Wellbutrin alone for depression." [AR 28].  For the reasons already described, the

13  ALJ permissibly found that plaintiff's mental impairment was not severe.  The ALJ did not find or suggest

14  that plaintiff failed to seek treatment commensurate with his alleged physical impairments, nor would such

15  a finding have been supported by the record.

16         For the foregoing reasons, the ALJ erred in failing to articulate clear and convincing reasons for his

17  negative credibility evaluation.

18  **Step five finding**

19         Plaintiff contends that the ALJ's finding that plaintiff can perform the alternative job of parking

20  booth attendant is defective because: (1)  the ALJ's hypothetical question failed to properly account for

21  plaintiff's subjective complaints, and for his inability to drive with one hand or while using Vicodin; and

22  (2) the vocational expert testified that 800 such jobs exist regionally, and that is not a "significant number"

23  of jobs. [JS 20-21].

24         The vocational expert identified only one alternative job that plaintiff could perform within the

25  parameters in the ALJ's hypothetical questions, parking lot booth attendant, Dictionary of Occupational

26  Titles ("DOT") job number 915.473-010.  The vocational expert testified that 800 such jobs exist regionally

27  and 15, 000 exist nationally. [AR 66-68].  The ALJ relied on the vocational expert's testimony to find

28  plaintiff not disabled. [

AR 29-30].

At step five of the sequential evaluation procedure, the Commissioner has the burden to establish that there are a significant number of jobs in the national economy that the claimant can perform. The Commissioner may meet the burden by taking the testimony of a vocational expert, or by referring to the grids. Tackett v. Apfel, 180 F.3d 1094, 1100-1101 (9th Cir. 1999). The ALJ's job at step five is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities . . . ." Tackett, 180 F.3d at 1101. "Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Tackett, 180 F.3d at 1101.

Since the ALJ did not properly evaluate plaintiff's subjective complaints, the ALJ's hypothetical questions incorporating the limitations in his RFC finding were legally erroneous, and the vocational expert's testimony in response to those hypothetical questions lacks evidentiary value.[5] See Embrey, 849 F.2d at 422. Therefore, the ALJ's step five determination cannot stand.

Plaintiff's contention that 800 parking lot attendant jobs regionally is not a "significant number" of jobs lacks merit. The vocational expert also testified that 15,000 such jobs are available nationally. That number is significant for purposes of the step five determination. See Beltran v. Astrue, 700 F.3d 386, 390 (9th Cir. 2012) ("If we find *either* of the two numbers 'significant,' then we must uphold the ALJ's decision.") (italics in original) (citing 42 U.S.C. sct 423(d)(2)(A)); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir.1989) (holding that 1,266 jobs regionally is a significant number of jobs).

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d

---

[5]    This conclusion makes it unnecessary to consider plaintiff's additional contention that the DOT job of parking lot attended exceeds his RFC because it involves driving customers' cars, something plaintiff cannot do on the job due to his one-handedness and use of narcotic pain medication. [See JS 22].

1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).   A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

The ALJ did not provide legally sufficient reasons for rejecting the alleged severity of plaintiff's subjective testimony regarding his subjective symptoms and functional limitations related to his left upper extremity impairment. The court has "some flexibility" in crediting as true evidence rejected for insufficient reasons. See Vasquez v. Astrue, 572 F.3d 586, 594 (9th Cir. 2009); Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). However, the factors that may justify declining to credit improperly rejected testimony as true are not present in this case. There is no contention that the record is not fully developed as to the time period adjudicated by the ALJ, and there is no reason to conclude that the ALJ could marshal sufficient evidence on remand to support his negative credibility finding with respect to the period under adjudication. If plaintiff's subjective testimony is credited, he would be limited to less than sedentary work during that period, and the vocational expert testified that there would be no alternative jobs available for such a person. [See AR 68-70]. See Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir.1989) ("[W]e generally award benefits when . . . the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion."); cf. Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (remanding for

1   further administrative proceedings where the ALJ improperly rejected the claimant's subjective complaints

2   and lay testimony, and several "outstanding issues" remained to be resolved, including whether, according

3   to a vocational expert, there was alternative work the claimant could perform with all of the limitations

4   supported by the record).  Crediting plaintiff's subjective testimony as true in this case is consistent with

5   "the purpose of the credit-as-true rule," which is "to discourage ALJs from reaching a conclusion about a

6   claimant's status first, and then attempting to justify it by ignoring any evidence in the record that suggests

7   an opposite result." Vasquez, 572 F.3d at 594.  "By requiring the ALJ to specify any factors discrediting

8   a claimant at the first opportunity, the rule ensures that pain testimony is carefully assessed, and helps

9   prevent unnecessary duplication in the administrative process." Vasquez, 572 F.3d at 594.

10        However, plaintiff testified that he was scheduled to undergo additional surgery shortly after the

11   hearing with the aim of reducing his chronic pain.  If successful, the surgery may have improved plaintiff's

12   RFC, making it appropriate on remand to award a closed rather than an open period of disability benefits.

13   See Bunnell, 336 F.3d at 1115-1116 (reversing for further administrative proceedings where "the timing and

14   duration of" the claimant's disability was an outstanding issue); Myers v. Richardson, 471 F.2d 1265, 1267

15   (6th Cir. 1972) (holding that the Secretary did not err in awarding a closed period of benefits following a

16   hearing on remand, and that the Secretary "has the power to determine in a single hearing the issues of the

17   fact of the claimant's disability, the extent of such disability, the duration of such disability and whether such

18   disability has terminated"). Therefore, an outstanding issue that remains to be resolved is the duration of

19   plaintiff's period of disability.

20                                      **Conclusion**

21        For the reasons stated above, the Commissioner's decision is not supported by substantial evidence

22   and does not reflect application of the proper legal standards.  Accordingly, the Commissioner's decision

23   is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings

24   consistent with this memorandum of decision.

25   **IT IS SO ORDERED.**

26   March 28, 2013

27

28                                    ANDREW J. WISTRICH
                                   United States Magistrate Judge